### The PEOPLE of the State of Colorado, Complainant,

v.

### Raymond E. WILDER, Attorney-Respondent.

### No. 93SA254.

Supreme Court of Colorado,
En Banc.

Oct. 18, 1993.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Michael Gross, Colorado Springs, for attorney-respondent.

**PER CURIAM.**

An inquiry panel of the Supreme Court Grievance Committee approved a stipulation, agreement, and conditional admission of misconduct entered into between the respondent and the assistant disciplinary counsel. The relevant portions of the stipulation are set out in the Appendix to this opinion. The parties recommended in the stipulation that the respondent be disciplined by either a private or public censure. In approving the stipulation, the inquiry panel recommended that a public censure be imposed. After reviewing the stipulation and considering the fact that the respondent has not been previously disciplined in thirty-three years of practice, we accept the stipulation and the recommendation of the inquiry panel. The seriousness of the respondent's misconduct, which involved at least a reckless disregard of his obligation not to withhold material information from the fact finder in a legal proceeding, precludes a private sanction.

Accordingly, it is hereby ordered that Raymond E. Wilder be publicly censured. It is further ordered that the respondent pay the costs of this proceeding in the amount of $421.62 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee.

### APPENDIX

### SUPREME COURT, STATE OF COLORADO

### CASE NO. 92B–66

### BEFORE THE GRIEVANCE COMMITTEE THEREOF

### STIPULATION, AGREEMENT, AND CONDITIONAL ADMISSION OF MISCONDUCT

The People of the State of Colorado, Complainant,

vs.

Raymond E. Wilder, Respondent.

NOW on this 10th day of August, 1993, James C. Coyle, Assistant Disciplinary

Counsel and attorney for Complainant; Michael Gross, Esq., attorney for respondent; and Raymond E. Wilder, respondent; enter into the following Stipulation, Agreement, and Conditional Admission of Misconduct and submit the same to Inquiry Panel A and the Colorado Supreme Court for their consideration.

1. Respondent has taken and subscribed the Oath of Admission, was admitted to the Bar of this Court on March 11, 1960, and is registered as an attorney upon the official records of this Court, Registration No. 7010. He is accordingly subject to the jurisdiction of this Court and its Grievance Committee in these proceedings.

. . . .

6. With respect to the allegations contained in the Complaint, respondent and complainant stipulate to the following facts and conclusions:

a. Respondent represented certain trustees and members of the Voter's Assembly of the Mount Olive Evangelical Church ("Mt. Olive").

b. [The Mt. Olive Pastor] had apparently attempted to "excommunicate" respondent's clients and these trustee-clients had apparently attempted to terminate [the Pastor's] employment. Control over the church was uncertain.

c. [An attorney with respondent's firm] drew and filed a Complaint on May 16, 1991, asserting eight (8) causes of action against the Pastor and other members of the church. The eight claims were:

1. declaratory judgment
2. preliminary injunction
3. mandatory injunction
4. breach of fiduciary duty
5. trespass to land and chattels
6. conversion
7. accounting
8. civil conspiracy

d. [The defendants' attorney] entered his appearance on behalf of the defendants.

e. A hearing was set on the preliminary injunction for May 28, 1991, twelve (12) days after the filing of the complaint.

f. Over plaintiff's objection, the preliminary injunction hearing was continued to June 4, 1991.

g. The preliminary injunction hearing started on June 4 and continued on June 21 and 24, 1991.

h. On June 27, 1991, the court entered an oral ruling requiring that the entire case be tried on its merits on July 29, 1991. The court deferred its ruling on the request for preliminary injunction.

i. [The defendants' attorney] had previously filed an Answer to the Complaint on June 11, 1991. That answer denied the material allegations of the complaint, and made several affirmative defenses. One of these affirmative defenses was that [the Pastor] did not convert any annuity funds (as alleged in Plaintiff's Sixth Claim for Relief) and that the funds were authorized by the church for removal and were for [the Pastor's] exclusive use.

j. All hearings on the case prior to June 27, 1991, dealt with the issue of a preliminary injunction which would prohibit the defendants from disposing of any church assets.

k. The parties had thirty-two (32) days to conduct discovery. No disclosure certificates, discovery plans or discovery schedules were ordered.

*l.* Respondent and opposing counsel . . . agreed to an informal exchange of witnesses and exhibits, and respondent agreed to provide the complete insurance annuity file to [the defendant's counsel].

m. On July 17, 1991, [the defendant's counsel] sent a letter to respondent confirming the agreement that respondent would supply him with any and all insurance records respondent received, whether or not respondent would utilize them as exhibits.

n. On July 18, 1991, respondent supplied insurance records he intended to use as exhibits at time of trial.

*o.* Respondent also issued a subpoena *duces tecum* to ... an official of the insurance company which sold the annuity policy, to produce a copy of the policy and other documents relating to it.

p. On Friday afternoon, July 26, 1991, [the insurance company official] faxed respondent certain documents from the insurance file, including an "Amendment" to the policy which stated that the owner of the policy shall be the annuitant ([the Pastor]).

q. The amendment had been signed two months after the 1982 application for the annuity by [the Pastor] and by [one of the respondent's clients], who is a member, trustee, and president of Mt. Olive as well as the insurance agent for the annuity.

r. Respondent first saw the amendment on Monday morning, July 29, 1991.

s. Respondent confronted his client ... with the document late in the afternoon on July 29. His client claimed he didn't remember this amendment, but admitted that the signature was his. Respondent noted that [the client] had signed this amendment on a signature line reserved for witnesses and not on the signature line for representatives of the owner.

t. Respondent concluded the amendment was ineffective on its face to transfer ownership because the owner of the policy (Mt. Olive) had not applied for the transfer; it had been signed by [the Pastor], the beneficiary, and by [the client] only in his capacity as a witness. All previous annuity documents had been signed by the church treasurer on behalf of Mt. Olive and witnessed by [the client].

u. Respondent determined that he would not offer the exhibit at trial. Respondent states that he then immersed himself into the press of preparing for trial the next day.

v. Respondent did not forward a copy of the amendment to [the defendants' counsel].

w. On July 29, 1991, [the defendant's counsel] called [the insurance company offi-cial] to confirm his testimony. [The insurance company official] advised [the defendants' counsel] that he would not be testifying based on a document he had faxed to respondent which demonstrated [the Pastor] was the owner of the policy. [The official] subsequently faxed a copy of the amendment to [defense counsel].

x. The matter proceeded to trial on July 30, 1991. Respondent did not use or refer to the Amendment as an exhibit and did not call [the insurance company official], or disclose that the insurance company file had an amendment which arguably demonstrated that the annuity belonged to [the Pastor]. Respondent, however, called [his client] to testify that Mt. Olive owned the annuity and [the Pastor] converted these annuity funds.

y. Upon the conclusion of the plaintiff's case, [the defendants' counsel] moved to dismiss all claims. Thereafter, the court ruled by a *preponderance* standard that there was a willful violation of the discovery rules and that a fraud on the court had been perpetrated by the plaintiffs.

z. The court dismissed the case with prejudice and awarded attorneys fees and costs to the defendants.

aa. Thereafter, respondent's clients hired separate counsel to negotiate settlement of the matter. The parties did settle the matter and agreed to pay their own fees.

bb. Respondent failed to provide a critical document to opposing counsel after agreeing to do so and also failed to reveal relevant information at time of trial.

cc. The foregoing conduct of respondent violates Rule 241.6 of the Colorado Supreme Court Rules concerning discipline of attorneys and also violates the Code of Professional Responsibility, DR 1–102(A)(1) (violation of a disciplinary rule); DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

. . . .

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

John Dean Hindorff, pro se.

*RECOMMENDATION FOR AND CONSENT TO DISCIPLINE*

Based on the foregoing, the parties hereto recommend that discipline in the range of a private censure to public censure is appropriate for the misconduct involved in GC 92B–66.

Raymond E. Wilder, respondent, acknowledges by signing this document that he has read and reviewed the above and requests the Inquiry Panel to recommend acceptance of the Conditional Admission as set forth.